## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSEPH A. BUAIZ, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-1312 (RMC)** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Defendant the United States of America's motion to dismiss the Amended Verified Complaint.[1]  Defendant contends that the Court lacks subject matter jurisdiction over the Complaint, which is based on alleged violations of the Internal Revenue Code ("Code"), Title 26 of the United States Code, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, because the United States has not waived its sovereign immunity with respect to such claims. Plaintiff Joseph A. Buaiz, Jr., proceeding *pro se*, opposes the motion.  For the reasons stated below, the Court will grant Defendant's motion in part and deny it in part.

## I.  BACKGROUND

Mr. Buaiz initiated this action on July 24, 2006 by filing a Verified Complaint; he filed an Amended Verified Complaint on September 8, 2006.  The Amended Complaint itself contains nothing more than a series of legal allegations and conclusions grouped into 26 "Counts" relating to alleged violations of the Code; one paragraph of legal contentions relating to alleged violations of the APA; and a statement of Mr. Buaiz's alleged damages.  Attached to the Amended

---

[1]  Although Mr. Buaiz names the United States as defendant, his claims are actually against the Internal Revenue Service ("IRS"), a constituent agency of the Treasury Department.

Complaint is an "Amended Verified Statement of Facts," which contains the factual averments that purportedly support the legal conclusions in the Amended Complaint.

The gravamen of Mr. Buaiz's allegations is that the IRS has imposed tax liens and civil penalties against him although he owes no unpaid taxes, and that the IRS and its agents violated various provisions of the Code in connection with their investigation and subsequent collection efforts. The Amended Verified Statement of Facts, which is somewhat opaque, specifically states that in April 1995 Mr. Buaiz received a Notice of Levy that contained false "Unpaid Balance(s) of Assessment" information. Am. Stmt. of Facts ¶ 3. Thereafter, the IRS recorded a Notice of Lien against Mr. Buaiz in February 1996. *Id.* ¶ 4. After fruitless correspondence, Mr. Buaiz received two letters signed by Jane Lethco, an IRS employee, instead of unsigned computer-generated notices. *Id.* ¶¶ 5-6. According to the letters, IRS believes that Mr. Buaiz owes taxes for the years 1993 and 1994 and civil penalties for the years 1989 through 1994. *Id.* ¶ 6.

Mr. Buaiz immediately contacted Ms. Lethco by telephone. *Id.* ¶ 8. "Agent Lethco, after admitting IRS records show no W-2 or 1099 information regarding [Mr. Buaiz] for the years 1989 through 1994, refused to release said liens." *Id.* Continuing to challenge the liens, Mr. Buaiz sought copies of assessment certificates relating to him through the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. *Id.* ¶ 10. An IRS Disclosure Specialist responded on February 23, 2006, "admitt[ing] Internal Revenue Service possessed no documents responsive to [Mr. Buaiz's] request for copies of properly executed assessments pertaining to [Mr. Buaiz] for years 1983 through 2004." *Id.* ¶ 11.

Velvet Cole, another IRS employee, wrote to Mr. Buaiz in March 2006 citing tax years 2000 through 2004 as years for which the IRS had not received any returns from Mr. Buaiz.

2

*Id.* ¶ 12.  When Mr. Buaiz telephoned her on March 24, 2006, Ms. Cole said that "she intended to investigate [him] to determine how [he] '. . . survived those years where there is no reported income.'" *Id.* ¶ 13.  On May 3, 2006, Ms. Cole personally served Mr. Buaiz with an original un-attested Form 2039 First Party Summons, which indicated that tax years 2002 through 2005 were the years being investigated.  *Id.* ¶ 17.  Ms. Cole introduced herself as "Special Agent Velvet Cole from the Internal Revenue Service," but Mr. Buaiz asserts that she is an administrative employee, not a special agent.  *Id.* ¶¶ 18-19.  Mr. Buaiz further alleges that Ms. Cole threatened him with arrest if he did not respond to the summons.  *Id.* ¶ 20.  Less than an hour after Ms. Cole delivered the Summons, Mr. Buaiz received a second copy of the same form in the mail.  *Id.* ¶ 23.  Mr. Buaiz responded on May 15, 2007, challenging the summonses.  *Id.* ¶ 30.  Ms. Cole personally served two identical summonses upon Mr. Buaiz on June 7, 2006.  *Id.* ¶ 25.  According to Mr. Buaiz, "[t]he same testimony and documentation is being sought in all four summonses."  *Id.* ¶ 28.  Mr. Buaiz contends that Ms. Cole has pursued this "campaign of harassment and witness tampering" against him, *id.* ¶ 29, despite the fact that the IRS has determined that Mr. Buaiz actually overpaid his taxes for 2004 and 2005, *id.* ¶ 34.

Based on the foregoing factual contentions, Mr. Buaiz asserts 26 separate Counts against the United States.  Because the 26 Counts in the Amended Complaint are dense, voluminous, and repetitive, the Court has grouped them into five general categories: (a) imposition of tax liens to collect taxes that were not properly owed, failure to release said liens, and failure to develop proper procedures governing the collection of unpaid taxes (Counts 6, 11, 14-16 & 18); (b) wrongful calculation of tax assessments, failure to suspend interest and penalties, and failure to make and properly record assessments (Counts 5, 7-8, 19, & 21); (c) failure to disclose to Mr. Buaiz, and

3

wrongful disclosure to third parties of tax returns, assessments, and other tax records (Counts 3, 9-10, & 17); (d) failure to notify Mr. Buaiz of his obligation to keep records and file tax returns and improper use of his social security number (Counts 1-2 & 4); and (e) harassment and other misconduct in connection with the investigation into Mr. Buaiz's alleged failure to pay taxes (Counts 12-13, 20, & 22-26).

The foregoing Counts are brought under 26 U.S.C. § 7433, which provides an individual taxpayer with a cause of action for damages "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title . . . ." Am. Compl. at p. 2. The Amended Complaint further alleges that all the foregoing conduct violated the APA. *Id.* at p. 19. Mr. Buaiz seeks $1,562,669 in damages. *Id.* at pp. 19-21.

Defendant filed a motion to dismiss on September 26, 2006. In addition to an opposition brief, Mr. Buaiz filed a surreply brief on December 1, 2006 and a Request for Judicial Notice on January 10, 2007. Because Mr. Buaiz is proceeding *pro se*, the Court has accepted and will consider his surreply. The Court declines to take judicial notice of the documents submitted with Mr. Buaiz's Request for Judicial Notice, but it will consider those documents to have been incorporated by reference into the Amended Complaint. Defendant's motion is now ripe for decision.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a plaintiff bears the burden of establishing by a preponderance of the evidence that the court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp.

4

2d 59, 63 (D.D.C. 2002); *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). In deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint "but may also consider material outside of the pleadings in its effort to determine whether [it] has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

## B.    Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). The court need not, however, accept as true inferences unsupported by facts set out in the complaint or legal conclusions

cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a 12(b)(6) motion, the Court may typically consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

## III.  ANALYSIS

Defendant's motion to dismiss is based on two arguments. First, Defendant spends the majority of its opening brief arguing that Mr. Buaiz's claims must be dismissed because Mr. Buaiz failed to exhaust administrative remedies. *See* Mem. of Law In Supp. of United States' Mot. to Dismiss the Am. Verified Compl. ("Def.'s Mem.") at 3-8. In his opposition brief, Mr. Buaiz states that he did submit a claim for damages to the IRS before filing this action and attaches a letter from the IRS denying his claim. *See* Pl.'s Opp. to Mot. to Dismiss Ex. A. In reply, Defendant concedes that Mr. Buaiz has exhausted administrative remedies and withdraws its argument that the Amended Complaint should be dismissed on that basis.

Defendant has one remaining argument in support of its motion to dismiss: that Defendant has sovereign immunity because Mr. Buaiz's claims fall outside the scope of the limited waivers of sovereign immunity contained in 26 U.S.C. § 7433 and the other statutes cited in the Amended Complaint. See Def.'s Mem. at 8-13. Mr. Buaiz responds that his claims do fall within those limits and are therefore subject to this Court's jurisdiction.

### A.      Jurisdiction Based On 26 U.S.C. § 7433.

It is a bedrock principle of American law that the United States, as sovereign, is immune from suit unless Congress has expressly waived that immunity. *See, e.g.*, *Block v. North*

*Dakota*, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."). The United States' exemption from suit is expressed in jurisdictional terms — that is, federal courts lack subject matter jurisdiction over suits against the United States in the absence of a waiver. *See, e.g.*, *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) ("a plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss."). Waivers of sovereign immunity are strictly construed and any doubt or ambiguity is resolved in favor of immunity. *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.") (internal citations omitted).

Apropos of this action, Congress effected a limited waiver of the IRS's sovereign immunity in the Taxpayer's Bill of Rights — specifically 26 U.S.C. § 7433, which allows suits for damages if the IRS or its agents have intentionally, recklessly, or negligently disregarded any provision of the Code "in connection with any collection of Federal tax . . . ." According to Defendant, "[c]ourts have 'narrowly construed the "collection" activity element of Section 7433.'" Def.'s Mem. at 8 (quoting *White v. Comm'r of Internal Revenue*, 899 F. Supp. 767, 772-72 (D. Mass. 1995)). That is, only actions in connection with the *collection* of taxes are actionable; conduct associated with investigation or assessment of income tax is beyond the statute's waiver of sovereign immunity. Because Mr. Buaiz's claims arise from conduct other than collection activities, Defendant argues, the Amended Complaint fails to state a claim under § 7433. Def.'s Mem. at 8-9.

Defendant is correct that courts have narrowly interpreted § 7433.  While only three Courts of Appeals have ruled on the question, all three agree that § 7433 does not provide a cause of action for wrongful tax assessment or other actions that are not specifically related to the collection of income tax.  *See Miller v. United States*, 66 F.3d 220, 222-23 (9th Cir. 1995) ("the assessment or tax determination part of the [Internal Revenue Code enforcement] process is not an act of 'collection' and therefore, not actionable under § 7433."); *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir. 1994) ("§ 7433 is limited to reckless or intentional disregard in connection with the *collection* of taxes.  An action under this provision may not be based on alleged reckless or intentional disregard in connection with the *determination* of tax.") (internal quotations omitted); *Gonsalves v. IRS*, 975 F.2d 13, 16 (1st Cir. 1992) (holding that plaintiff's claim based on "the government's refusal to give him a tax refund runs afoul of the clause in Section 7433 which says that a taxpayer may sue only if an IRS agent disregards a statute or regulation 'in connection with any *collection* of Federal tax.'"); *see also Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 411 (4th Cir. 2003) (stating in *dictum* that "§ 7433 provides for a 'civil action' only for damages arising from the 'collection' of taxes, not for damages arising from the investigation and determination of tax liability.").  District courts in other circuits — including this circuit — have also reached the conclusion that § 7433 is strictly limited to actions based on the collection of taxes.  *See, e.g.*, *Snyder v. IRS*, 1998 WL 796768, No. 97-2929, at *2 (D.D.C. Oct. 6, 1998) ("Because Plaintiffs have not shown how any IRS agent disregarded a statute or regulation in connection with the *collection* of their taxes, this Court has no jurisdiction over this matter"); *Ludtke v. United States*, 84 F. Supp. 2d 294, 301 (D. Conn. 1999) ("It is well settled that Section 7433 does not create a cause of action for

reckless or intentional conduct by an IRS employee in the determination of a federal tax, but only reckless or intentional misconduct by an IRS employee in the collection of a federal tax.").

These courts' decisions to interpret § 7433 narrowly are based on sound reasoning. First, the legislative history of § 7433 makes clear that Congress intended to limit the waiver of sovereign immunity to matters relating to collection. *See Miller*, 66 F.3d at 223 ("the conference committee responsible for [§ 7433] rejected a proposed amendment to allow taxpayers the right to sue for damages in connection with the *determination* of federal tax."). Second, a narrow interpretation is consistent with Congress's broad intent that the federal judiciary have limited jurisdiction over cases involving the assessment and collection of income taxes. *See, e.g.*, 26 U.S.C. § 7421 ("the Anti-Injunction Act") (prohibiting federal courts from restraining the assessment or collection of any tax); *see also Rossotti*, 317 F.3d at 411 (refusing to create a *Bivens*[2] remedy for violations of the Code because Congress had already crafted a "complex statutory scheme regulating the relationship between taxpayers and the IRS"). Third, it is consistent with the general rule that any ambiguity in waivers of sovereign immunity be resolved in favor of the sovereign. *See Lane*, 518 U.S. at 192. For these reasons, this Court concludes, like other courts that have addressed the issue, that § 7433 waives the United States' sovereign immunity only with respect to claims arising from the collection of income taxes. Claims that the IRS has incorrectly determined the amount of taxes owed, or that IRS agents acted improperly in the course of investigating a taxpayer, fall outside the limited waiver of sovereign immunity contained in § 7433.

---

[2] *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

9

Applying this understanding of § 7433 to the instant case, the Court finds that the majority of Mr. Buaiz's claims must be dismissed for lack of jurisdiction.[3] The first group of claims that must be dismissed are those based on and related to the IRS's alleged wrongful calculation of tax assessments. Specifically, Counts 5, 7, 8, 19, and 21 all arise from the assessment of taxes and are therefore beyond § 7433's sovereign immunity waiver. The second group that must be dismissed — Counts 3, 9, 10, and 17 — are related to the IRS's alleged failure to disclose to Mr. Buaiz, and wrongful disclosure to third parties of, tax returns, assessments, and other tax records. Again, these claims are unrelated to the collection of taxes and fall outside the scope of § 7433. The third group of claims subject to dismissal are Counts 1, 2, and 4, which are based on the IRS's alleged failure to notify Mr. Buaiz of his obligation to keep records and file tax returns and improper use of his social security number. The Court clearly lacks jurisdiction over these claims. Finally, the Court must dismiss Counts 12, 13, 20, and 22 through 26. Those are Mr. Buaiz's claims based on alleged harassment and other misconduct by the two IRS agents who investigated Mr. Buaiz's alleged failure to pay taxes. Like the other claims discussed above, these claims have nothing to do with the collection of taxes and are therefore outside this Court's jurisdiction.

Mr. Buaiz argues that the Court should adopt a broader interpretation of § 7433. According to Mr. Buaiz, § 7433 should be read in accordance with the Anti-Injunction Act, which courts have interpreted broadly to apply "not only to the assessment and collection of taxes, but to activities which are intended to or may culminate in the assessment or collection of taxes as well."

---

[3] Although Defendant argues that dismissal is warranted under Rule 12(b)(6), the Court believes that the failure to base a § 7433 claim on collection activities takes the claim outside the United States' waiver of sovereign immunity and is therefore subject to dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See, e.g.*, *Miller*, 66 F.3d at 223.

10

Pl.'s Surreply at 12 (quoting *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983)).  It would be anomalous, Mr. Buaiz contends, to interpret the Anti-Injunction Act broadly to include any conduct that might result in the collection of taxes while interpreting § 7433 narrowly to include only actual collection activities.  *See* Pl.'s Surreply at 12.  Under this view of the law, federal courts would have essentially no jurisdiction to enjoin the government from engaging in conduct related to the enforcement and application of the Code but expansive jurisdiction to award damages against the government based on the same conduct.  There is nothing in the language or logic of the Anti-Injunction Act or § 7433 to indicate that Congress intended such a result.  In fact, that result would contravene Congress's intent to limit judicial oversight of the government's assessment and collection of federal income taxes, see *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962), and disrupt the congressionally created statutory scheme governing taxpayers' ability to challenge alleged misconduct by the IRS and its agents, see *Rossotti*, 317 F.3d at 410-11.  Only a narrow interpretation of § 7433 can be harmonized with Congress's goal that the federal judiciary have limited jurisdiction in cases arising under the Code.

Mr. Buaiz also argues that, even if the Court narrowly interprets § 7433, the allegations in the Amended Complaint do relate to the "collection" of income tax and are therefore actionable.  Specifically, Mr. Buaiz points to Counts 12 and 13 in which he asserts that the IRS's alleged wrongful conduct was "in connection with collection. . . ."  *See* Pl.'s Surreply at 2.  But the allegations to which Mr. Buaiz points are legal conclusions, not factual contentions.  In deciding a motion under Rule 12, the Court need not accept as true conclusions of law or legal conclusions cast as factual allegations.  *See, e.g.*, *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006).  Here, the genuine factual allegations in the Amended Complaint and Statement of Facts make clear

11

that the alleged wrongful conduct was in connection with investigative subpoenas that the IRS served on Mr. Buaiz, not in connection with collection activities. Mr. Buaiz cannot transform these allegations into a valid claim under § 7433 merely by copying the language of the statute into his Complaint. Mr. Buaiz's legal conclusions notwithstanding, the aforementioned Counts in the Amended Complaint fail to allege actionable conduct under § 7433 and therefore fall outside the Court's jurisdiction.

Mr. Buaiz does, however, assert claims that at least arguably arise from the collection of income taxes. Specifically, Counts 6, 11, 14, 15, 16, and 18 are based on allegations that the IRS imposed tax liens to collect taxes that Mr. Buaiz did not actually owe, that the IRS failed to release those liens despite Mr. Buaiz's requests that it do so, and that the IRS failed to develop proper procedures governing the collection of unpaid taxes. Indeed, by failing to address them in its papers, Defendant implicitly concedes that these Counts allege actionable misconduct in connection with the collection of income taxes. *See* Def.'s Mem. at 9-10. Taking these allegations in the light most favorable to Mr. Buaiz, the Court concludes that they state a valid claim under § 7433.

**B.    Other Alleged Bases for Jurisdiction.**

In addition to his claims under § 7433, Mr. Buaiz alleges that all the actionable conduct alleged in the Amended Complaint also violated the Administrative Procedure Act. *See* Am. Compl. at p. 19. The APA "waives sovereign immunity for suits seeking judicial review of federal administrative agency action." *Larsen v. U.S. Navy*, 346 F. Supp. 2d 122, 128 (D.D.C. 2004). By its express terms, however, the APA does not waive immunity for claims seeking money damages. 5 U.S.C. § 702 (waiving immunity for an "action in a court of the United States seeking

12

relief *other than* money damages") (emphasis added). Because Mr. Buaiz seeks money damages as his only remedy, the APA does not waive Defendant's sovereign immunity.

The law compels the same conclusion to the extent that Mr. Buaiz attempts to base jurisdiction on the federal question statute, 28 U.S.C. § 1331, the Mandamus Act, 28 U.S.C. § 1361, and/or the All Writs Act, 28 U.S.C. § 1651. *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) ("Neither the general federal question statute nor the mandamus statute by itself waives sovereign immunity."); *Holt v. Davidson*, 441 F. Supp. 2d 92, 96 (D.D.C. 2006) ("the All Writs Act, 28 U.S.C. § 1651, . . . does not operate as a waiver of sovereign immunity."). Nor do any of the other statutory and constitutional provisions implicitly or explicitly referenced in the Amended Complaint provide a waiver of the United States' sovereign immunity. *See, e.g.*, *Benvenuti v. Dep't of Defense*, 587 F. Supp. 348, 352 (D.D.C. 1984) ("None of the statutes cited by plaintiff . . . [including] the Declaratory Judgment Acts, 28 U.S.C. §§ 1651, 2201-02—nor the Constitution itself—operate as" waivers of sovereign immunity).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion in part and deny it in part. Counts 1-5, 7-10, 12, 13, 17, 19, and 20-26 are not based on the collection of federal income taxes and are therefore outside the waiver of sovereign immunity contained in 26 U.S.C. § 7433. The other statutes cited in the Amended Complaint, including the APA, 28 U.S.C. § 1331, the All Writs Act, and the Mandamus Act similarly contain no sovereign immunity waiver for these types of claims. Accordingly, Defendant's motion to dismiss for lack of jurisdiction will be granted with respect to those Counts. Defendant's motion will be denied, however, with respect to Counts 6, 11, 14, 15, 16, and 18, because those Counts allege misconduct in connection with the collection

13

of income taxes and therefore state a valid claim under 26 U.S.C. § 7433.  A memorializing order

accompanies this Memorandum Opinion.


Date:  January 24, 2007                          _____/s/_____
                                                 ROSEMARY M. COLLYER
                                                 United States District Judge